**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re | **OPINION** |
| SOUTH & HEADLEY ASSOCIATES, LTD., | Case No. 20-15695 (VFP) |
| Debtor. | Chapter 11 |
| SOUTH & HEADLEY ASSOCIATES, LTD., | |
| Appellant, | Civil Action No. 20-07410 (CCC) |
| v. | Bankruptcy Appeal |
| SOUTH STREET MORRISTOWN LLC, | |
| Appellee. | |

**CECCHI, District Judge.**

This matter comes before the Court on Appellant South & Headley Associates, LTD.'s ("Appellant") appeal (ECF No. 1) from the Bankruptcy Court's Order dismissing Appellant's bankruptcy case, and in the alternative, granting Appellee South Street Morristown LLC ("Appellee") relief from the automatic stay. Bankr. ECF No. 51 ("Bankr. Dism. Ord.");[1] *see also* ECF No. 4 ("Appellant Br."). Appellee submitted a brief in opposition (ECF No. 6 ("Appellee Br.")) and Appellant replied (ECF No. 8 ("Appellant Reply Br.")). The parties filed additional submissions concerning supplemental authority. ECF Nos. 22, 23 The Court has carefully considered the parties' submissions and decides this matter without oral argument pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court

---

[1] The docket number of the underlying bankruptcy case is 20-15065. All citations to "Bankr. ECF No." will be in reference to that case.

denies Appellant's appeal and affirms the Order of the Bankruptcy Court.

## I.  **BACKGROUND**

The parties are familiar with the factual and procedural history of this matter, as well as its extensive record.  Although these facts are not in dispute on appeal (*see* Appellant Br. at 7-12; Appellee Br.  at 1-6), the Court restates the relevant background facts. *See also* Bankr. ECF No. 38 at 29:1-33:8 (the "Apr. 24 Hear. Tr.") (recounting the facts during April 24, 2020 hearing on Appellee's "Motion for an Order Enforcing Confirmation Order and Dismissing the Debtor's Bankruptcy Case 'For Cause' or Granting Relief from the Automatic Stay Pursuant to 11 U.S.C. §§ 1112(b), 362, and 105(a)" (the "Motion to Dismiss") (Bankr. ECF No. 11)).[2]

On September 23, 2005, Appellant executed a promissory note and mortgage as consideration for and to secure a mortgage loan from Appellee's assignor, Columbia Bank, in the principal amount of $3,000,000.  *Id.* at 29:6-10.  The mortgaged premises is 237 South Street, Morristown, New Jersey (the "Property"), and is Appellant's only asset as stated in its Chapter 11 Petition.  *Id.*; *see also* Bankr. ECF No. 1.  Appellant defaulted on the loan on August 1, 2012, and Columbia Bank subsequently filed a foreclosure complaint in May of 2014 with the Superior Court of New Jersey, Chancery Division, Morris County (the "Foreclosure Action").  Apr. 24 Hear. Tr. at 29:11-15.  A final judgment in the Foreclosure Action was subsequently entered in favor of Appellee and against Appellant.  *Id.* at 29:12-13.  After exercising all remedies under state law to avoid a sheriff's sale of the Property, Appellant filed its first voluntary petition on September 4, 2014.  *Id.* at 29:13-15.

Following lengthy proceedings, the Bankruptcy Court entered an order (the "Confirmation

---

[2] The Bankruptcy Court made its findings of fact and law on the record at the April 24, 2020 hearing.  *See* Apr. 24 Hear. Tr.  The findings were later incorporated into the Bankruptcy Dismissal Order that was entered on June 3, 2020.  *See* Bankr. Dism. Ord.

Order") on April 27, 2016, confirming Appellant's modified plan of reorganization (the "Plan"). *Id.* at 29:17-22. It determined that the Plan was the result of extensive mediation and negotiation—with the involvement of the Bankruptcy Court—where each party was represented by "extremely sophisticated, extremely experienced, . . . very, very competent counsel." *Id.* 39:23-40:4. Appellant did not appeal the Confirmation Order, nor did it file a motion under Rule 60(b) of the Federal Rules of Civil Procedure, as is required to seek relief from a judgment or an order. *Id.* at 37:10-14. The Confirmation Order granted Appellee a secured claim of $3,200,000 against the Property, allowed Appellee to retain its secured mortgage lien on the Property, reinstated all note and loan documents, and required Appellant to satisfy Appellee's secured claim—after an initial $600,000 payment from an escrow fund—by making 47 monthly payments of $21,857.77. *Id.* at 30:5-19. A final 48th payment of $2,252,447.13 would be due on March 1, 2020, with any remaining amounts outstanding under the mortgage note due to Appellee by March 31, 2020. *Id.*

The Confirmation Order contained two provisions that are at the center of this dispute. *Id.* at 30:20-21. The first provision granted Appellee relief from the automatic stay if Appellant were to file another bankruptcy petition in the future (the "Stay Waiver"). *Id.* at 30:21-32:2. The Stay Waiver reads in part, "the Debtor hereby waives the benefit of any such stay or injunctive relief, automatic or otherwise, and *shall consent and agrees to raise no objection to relief from any automatic stay* imposed by § 362 of the Bankruptcy Court." Conf. Ord. ¶ 2(I)(i) (emphasis added). The second provision barred Appellant from filing another bankruptcy petition so long as it remained indebted to Appellee (the "Filing Waiver"). *Id.* at 32:6-13; *see* Conf. Ord. ¶ (11) ("The Debtor be and is hereby prohibited from filing another petition for relief under the United States Bankruptcy Code while the indebtedness remains outstanding to South Street."). Neither party

disputes that these provisions were part of the Confirmation Order and Plan.

On March 30, 2020, the night before the final 48th payment was due and nearly four years after entry of the Confirmation Order, Appellant filed its second bankruptcy petition. *Id.* at 33:3-5. Appellee responded by filing its Motion to Dismiss the action pursuant to the explicit terms of the Confirmation Order, or in the alternative, to grant relief from the automatic stay pursuant to the Stay Waiver. Id. at 33:5-8. The Bankruptcy Court found that the Filing Waiver was violated by Appellant's subsequent bankruptcy petition, and that the Stay Waiver was violated by Appellant's objection to the Motion to Dismiss. *Id.* at 31:11-32:5, 32:14-21. However, the questions presented to the Bankruptcy Court did not center on whether the provisions were violated—Appellant recognized they were—but rather: (1) whether the Filing Waiver is a pre-petition *ipso facto* clause that is void against public policy; and (2) whether the Stay Waiver is *per se* unenforceable, or at the very least, whether determination of the enforceability of a Stay Waiver requires a plenary evidentiary hearing. *Id.* at 33:25-34:7.

The Bankruptcy Court granted the Motion to Dismiss, and, in the alternative, granted relief from the automatic stay. *Id.* at 45:7-46:5. It began its analysis by stating that "as a preliminary matter," the Confirmation Order was a final and appealable order, and "[n]o such appeal was filed here." *Id.* at 36:18-24 (citing *In re PWS Holding Corp.*, 228 F.3d 224, 235 (3d Cir. 2000); Fed. R. Bankr. P. 8002(a)). The Bankruptcy Court found that the required procedural route was not followed by Appellant, and instead, "there was a filing in violation of the [Confirmation Order] . . . asking essentially to declare it unenforceable . . . even though it is a final and appealable and non-appealed order." *Id.* at 37:14-20. The Bankruptcy Court also found that Appellant failed to seek relief under Rule 60(b) of the Federal Rules of Civil Procedure. *Id.* at 37:10-14.

In addition to its discussion of the procedural infirmities, the Bankruptcy Court also

addressed the merits of the Motion to Dismiss.  In its analysis of the merits, the Bankruptcy Court placed heavy emphasis on the interests of incentivizing settlement, finality, and the need for parties to be able to rely on court-approved settlements. *See id*. at 45:7-46:5 ("And, you know, I'm going to enforce a heavily negotiated court-approved order as it was written, because I think that's my duty, and I think that's the right thing to do as a policy basis, as a legal basis, and as a basis of fairness and continuing to encourage parties to resolve disputes and to be able to rely on the finality of what the [Bankruptcy] Court says in resolving those disputes.  So that's my ruling.").   Moreover, the Bankruptcy Court stressed that the provisions at issue had been negotiated by sophisticated parties who were represented by counsel, agreed upon through mediation that was overseen by Chief Judge Michael B. Kaplan, and that those provisions were central to resolving Appellee's objections to the plan and thus its ultimate confirmation. *See, e.g., id.* 6:20-24, 39:23-40:4, 40:13-21. Accordingly, the Bankruptcy Court held that the Stay Waiver and Filing Waiver were enforceable in this specific circumstance.  The Bankruptcy Court subsequently granted a stay of its Dismissal Order pending this appeal.  *See* Bankr. ECF No. 46 ("May 19 Hear. Tr."); Bankr. ECF No. 52 ("Bankr. Stay Ord.").

## II.   <u>LEGAL STANDARD</u>

A district court has appellate jurisdiction over a bankruptcy court's final judgments, orders, and decrees.  28 U.S.C. § 158(a)(1).  The standard of review for bankruptcy court decisions "is determined by the nature of the issues presented on appeal." *Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*, 321 B.R. 147, 157 (D.N.J. 2005).  The decision to dismiss a bankruptcy petition "is committed to the sound discretion of the bankruptcy or district court" and is reviewed on appeal for abuse of discretion. *In re SGL Carbon Corp.*, 200 F.3d 154, 159 (3d Cir. 1999).  A bankruptcy court abuses its discretion when its decision "rests upon a clearly erroneous

finding of fact, an errant conclusion of law, or an improper application of law to fact." *ACLU v. Black Horse Pike Reg'l Bd. of Ed.*, 84 F.3d 1471, 1476 (3d Cir. 1996). Accordingly, factual findings may only be overturned "when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *In re Cellnet Data Sys.*, 327 F.3d 242, 244 (3d Cir. 2003) (internal citations and quotation marks omitted). Legal conclusions, on the other hand, are subject to de novo review by the district court. *See Donaldson v. Bernstein*, 104 F.3d 547, 551 (3d Cir. 1997).

## III.   **DISCUSSION**

Appellant frames the issues on appeal as whether the Bankruptcy Court erred by relying solely on the terms of the Confirmation Order to: (i) grant relief from the automatic stay and (ii) dismiss the bankruptcy. Appellant Br. at 5. Appellant argues that a plenary hearing is required to determine the enforceability of the two provisions at issue. *Id.* at 5-6. Essentially, Appellant contends that without a full evidentiary hearing, reliance on the provisions of the Confirmation Order alone treats those provisions as impermissible *ipso facto* clauses. *See, e.g., id.* at 15.

With respect to the Stay Waiver, Appellant acknowledges that various courts have indeed found such waivers enforceable, and not necessarily requiring a plenary evidentiary hearing. *See, e.g.,* Apr. 24 Hear. Tr. at 12:15-13:6; *id.* at 22:15-20 (colloquy with the Bankruptcy Court addressing *In Re Blocker*, 411 B.R. 516 (Bankr. S.D. Ga. 2009)). Nevertheless, Appellant points to *In re Jenkins Ct. Associates Ltd. Partn.*, 181 B.R. 33, 34 (Bankr. E.D. Pa. 1995), *see* Appellant Br. at 18, and "requests this Court to adopt the *Jenkins* treatment of stay waivers," *id.* at 19. While *Jenkins* recognized that bankruptcy courts do not always enforce stay waivers, the court surveyed the legal landscape and explained that two pathways generally existed for courts to find such waivers enforceable. As Appellant acknowledges, *Jenkins* categorized decisions finding stay

waivers to be enforceable as typically premised upon either: "(1) a factual determination that the debtor has no prospect of a successful reorganization in a reasonable period of time; or (2) the conclusion that the pre-petition waiver should be enforced based on public policy grounds." *Id.* at 19; *see also Jenkins*, 181 B.R. at 36 ("Perhaps the most compelling reason for enforcement of [a stay waiver] is to further the public policy in favor of encouraging out of court restructuring and settlements.") (quoting *In re Cheeks,* 167 B.R. 817, 819 (Bankr. D.S.C. 1994). Accordingly, Appellant urges the Court to adopt the first path, as in *Jenkins*, and remand for a factual determination on the prospects of successful reorganization. Appellant Br. at 19.

In response, Appellee draws a distinction between waivers of the automatic stay in pre-petition agreements without the bankruptcy court's involvement, on the one hand, and those within settlements incorporated into a prior bankruptcy confirmation order approved by the bankruptcy court, on the other. Appellee Br. at 12. Appellee argues that *Jenkins* fits into the first group, and is thus distinguishable. That is, Appellant contends that, unlike here, "the wavier [in *Jenkins*] was not part of a court approved agreement or part of a reorganization plan." *Id.* at 13; *see also id.* at 13-15 (collecting cases enforcing stay waiver where incorporated in a prior bankruptcy plan). Appellee also relies upon the fact that the Stay Waiver—as well as the Filing Waiver—was agreed to by a sophisticated debtor that was represented by experienced counsel, following mediation and extensive negotiations. *Id.* at 12. Accordingly, Appellee argues, enforcing the waivers "under these conditions does not violate public policy concerns." *Id.* at 15 (citing *In re Excelsior Henderson Motorcycle Mfg. Co., Inc.*, 273 B.R. 902, 924 (Bankr. S.D. Fla. 2002).

Appellee's distinction between waivers without the court's imprimatur and waivers incorporated into a court-approved confirmation order is well taken. *See, e.g., In re Ramirez Carrero,* 2022 WL 1721245, at *5 (Bankr. D.P.R. May 27, 2022) (embracing this distinction in

finding that "some courts have allowed enforcement of prepetition waivers when the waiver is incorporated and ratified in a bankruptcy proceeding"). However, this Court need not draw such a sharp line to resolve the issue of enforceability under the present circumstances.  Applying the *Jenkins* framework which Appellant proposes, *see* Appellant Br. at 19, this Court finds that the Bankruptcy Court enforced the Stay Waiver in the interests of incentivizing settlement, finality, and reliance upon court orders.   These are bankruptcy policy considerations which *Jenkins* explained was one of the two ways bankruptcy courts typically enforce such waivers. *See Jenkins*, 181 B.R. at 35-36; *see also* Apr. 24. Hear. Tr. at 45:23-46:5 (justifying enforcement of "a heavily negotiated court-approved order" on "a policy basis," as well as "a basis of fairness and continuing to encourage parties to resolve disputes and to be able to rely on the finality of what the [Bankruptcy] Court says in resolving those disputes").  The Bankruptcy Court further determined that enforcing the waiver under these circumstances "served the salutary purpose of reaching finality in litigation, judicial economy and a compromise…[and] [f]ailing to enforce it would make a charade of the entire process and lead parties to be disinclined to settle cases." *Id.* 45:2-6.  This rationale falls squarely within *Jenkins*'s second pathway for finding such waivers enforceable: namely, on the basis of the public policy reasons underlying the bankruptcy code, including incentivizing settlement. *See Jenkins,* 181 B.R. at 36; *In re Cheeks,* 167 B.R. at 819; *see also* Appellant Br. at 18 (noting the second premise upon which bankruptcy courts enforce stay waivers is "the conclusion that [they[ should be enforced based on public policy grounds"). Accordingly, the Bankruptcy Court did not abuse its discretion when relying upon these interests to effectuate the terms of the settlement expressly incorporated into the Confirmation Order.

Moreover, the Bankruptcy Court's determination was further supported by its finding that the provisions of the Confirmation Order at issue here were "integral component[s]" to reaching

agreement on the restructuring plan, and were negotiated by sophisticated parties represented by counsel through mediation in which the Bankruptcy Court was heavily involved. *In re Tillotson*, 266 B.R. 565, 568 (Bankr. W.D.N.Y. 2001) (dismissing debtor's second bankruptcy where first bankruptcy resulted in "substantially consummated confirmed plan"); *see also, e.g.,* Apr. 24. Hear. Tr. at 40:2-7 ("[T]his court has extensive experience with the parties involved [who are] extremely sophisticated, extremely experienced, represented by very, very competent counsel.  And it just seems to me that if there were ever a case that a party should be held to the benefit of its bargain and the terms of an order, this is it."); *id.* 40:13-21 ("And there is no question in my mind that was something that [Appellee] relied on. It's right there…. I don't have to take [Appellee's counsel's] representation for it. It's right in the words of the [Confirmation Order].").  Therefore, the Bankruptcy Court here, "as a court of equity," operated within its discretion to consider such factors in order to "balance the Congressionally expressed public policy underpinning the Bankruptcy Code with .. the right to rely on the terms of a bargained-for … settlement agreement." *Jenkins*. 181 B.R. at 36 (citing *In re Tobago Trading Co.*, 112 B.R. 463 (Bankr. N.D. Ga. 1990)).

With respect to the Bankruptcy Court's decision to enforce the Filing Waiver and thereby dismiss the bankruptcy for cause, these considerations apply with similar force. *See In re Newark Airport/Hotel Limited Partnership*, 156 B.R. 444, 448 (Bankr. D.N.J. 1993), *aff'd* 155 B.R. 93 (D.N.J. 1993) (noting Section 1112(b) of the Bankruptcy Code authorizes the court to dismiss a chapter 11 petition for "cause"); *see als*o Bankr. Dism. Ord. (dismissing for cause).  "What constitutes 'cause' … is subject to judicial discretion under the particular circumstances of each case." *Matter of Potts*, 188 B.R. 575, 581 (Bankr. N.D. Ind. 1995).  In the present circumstances, the Bankruptcy Court found that, as with the Stay Waiver, the Filing Waiver was an essential component of the settlement of Appellant's first bankruptcy, which was negotiated by

sophisticated parties through mediation with the court's involvement. *See* Apr. 24. Hear. Tr. at 40:13-21, 41:6-17.   Similarly, the Bankruptcy Court's reliance on the policy interests of incentivizing settlement, the finality of court orders, and the need for parties to be able to rely on those court orders applies just as persuasively to the Filing Waiver as to the Stay Waiver. *See id.* at 45:23-46:4.  The Bankruptcy Court's thoughtful consideration of the process by which the Filing Waiver was agreed upon and the policy implications of failing to give it effect thus militates against overturning the Bankruptcy Court's decision.

Appellee also argues that insofar as Appellant suggests an analysis of the factors laid forth in *In re Desai,* 282 B.R. 527 (Bankr. M.D. Ga. 2002) was required to determine the enforceability of the Stay Waiver and the Filing Waiver, the Bankruptcy Court indeed engaged in that analysis. *See* Appellee Br. at 17-21; *see also* Apr. 24 Hear. Tr. at 11:1-22. Those factors consist of: "(1) the sophistication of the party making the waiver; (2) the consideration for the waiver, including the creditor's risk and the length of time the waiver covers; (3) whether other parties are affected including unsecured creditors and junior lienholders, and; (4) the feasibility of the debtor's plan." *Desai*, 282 B.R. at 532. Putting aside whether analysis of these factors is, in fact, required, here the Bankruptcy Court nevertheless looked beyond the terms of the Confirmation Plan and found that the *Desai* factors, on balance, supported enforcement. *See* Apr. 24. Hear. Tr. at 43:13-44:20 (discussing *Desai* and finding all factors except feasibility of the plan—which, as in *Desai* could not yet be determined at this early stage of the bankruptcy—supported enforceability).[3]

---

[3] Relatedly, Appellee also disputes Appellant's assertion that the proceedings below lacked a plenary hearing. *See* Appellee Br. at 22. Appellee contends that at the April 24, 2020 hearing, the Bankruptcy Court considered all the evidence in the record which was properly submitted through a certification of a person with knowledge pursuant to L. Bankr. R. 9013-1. *Id.* Although Appellant argues the Bankruptcy Court should have addressed the equity in the Property (which Appellant suggests could have been established either by introduction of an alleged contract of sale of the Property or by oral testimony of Appellant's principal at the hearing), this would be pertinent to the first path of waiver enforcement in *Jenkins*—namely "a factual determination that … there was

To the extent Appellant argues that, regardless of these considerations, it is against public policy to waive on a pre-petition basis the protection of the Bankruptcy Code (and thus the Filing Waiver it agreed to is unenforceable), *see* Appellant Br. at 15-16, that concern is allayed under the present circumstances. First, the Bankruptcy Court noted the Filing Waiver "is not an absolute bar," but rather bars "filing while the indebtedness remains outstanding to South Street" and therefore is "not an absolute prohibition, but a very limited, specific one to the South Street debt." Apr. 24 Hear. Tr. at 32:16-21.  Moreover, the principal case Appellant cites for this argument, *In re Madison*, 184 B.R. 686 (Bankr. E.D. Pa. 1995), indicated that—in contrast to pre-petition waivers *without* the bankruptcy court's involvement—"the utilization of orders [by the bankruptcy court] which … precludes further filings if certain commitments of a debtor are not kept" is indeed a permissible tool for a bankruptcy court to flexibly manage the bankruptcy process. 184 B.R. at 692 (quoting *In re Oglesby*, 161 B.R. 917, 924 (Bankr. E.D. Pa. 1993) and endorsing the *Oglesby* court's order precluding a subsequent filing); *see also* Appellant Br. at  15-16 (relying on *Madison*). And here, the Bankruptcy Court did just that: it entered a Confirmation Order precluding a further filing on a limited basis if the debtor's commitment to the court-approved plan was not kept. In addition, *Madison* went on to explain that the order in *Oglesby* precluding a filing was permissible because, prior to entering it, the *Oglesby* court had considered all the facts of the relevant bankruptcy. *See* Madison, 184 B.R. at 692.  Here, Appellant has not suggested that the

---

no possibility of an effective reorganization." *Jenkins,* 151 B.R. at 35-36; *see* Appellant Br. at 19. However, as explained above, the Bankruptcy Court made its determination in accordance with the second *Jenkins* pathway. *See id.* at 36 (policy of enforcing court-approved settlements reached by sophisticated parties).  In any event, the Bankruptcy Court noted that Appellant had failed to introduce the alleged contract into the record prior to the hearing, and Appellant did not seek prior court authorization for oral testimony pursuant to L. Bankr. R. 9013-3. *See* Appellee Br. at 22; *see also* Apr. 24 Hear. Tr. at 17:19-20 ("It wouldn't be a big deal to put in a certification [attaching] a copy of the contract."); *id.* at 44:17-19 ("The debtor raised the [contract showing equity] and said that he had it, and I don't have it, so I can't credit that at this moment.").

Bankruptcy Court during its *first bankruptcy*—i.e., when the Confirmation Order with the Filing Waiver was entered—failed to adequately consider all the facts of the bankruptcy when it approved that Order. Nor could Appellant make such a suggestion given that court's extensive involvement in the negotiations, mediation, and confirmation process that ultimately led to settlement and confirmation. *See, e.g.,* Apr. 24. Hear. Tr. 45:16-46:4. Appellant's challenge to the Bankruptcy Court's dismissal of Appellant's second bankruptcy, as with its challenge to enforcement of the Stay Waiver, is therefore unavailing.[4]

Accordingly, the Bankruptcy Court did not abuse its discretion, make a clearly erroneous finding of fact, or commit clear legal error, when it granted Appellant's Motion to Dismiss based on detailed consideration of the circumstances of this particular bankruptcy.[5]

---

[4] Appellant also argues that dismissal cannot be supported on the basis of bad faith, as originally alleged by Appellee in its moving papers. *See* Appellant Br. at 14. Appellee responds that the record includes evidence as to bad faith "which the Bankruptcy Court clearly considered before dismissing Appellant's bankruptcy case." Appellee Br. at 5-6. Courts have found bad faith where the debtor failed to show it "entered the bankruptcy process with any real intention to reorganize rather than for purposes of delay." *In re Newark Airport*, 156 B.R. at 448-49; *see also In re SGL Carbon Corp.*, 200 F.3d at 162 n.10 ("Once at issue, the burden falls upon the bankruptcy petitioner to establish that the petition has been filed in 'good faith.'"); *id.* at 166 n. 16 (holding "no list is exhaustive of all the factors which could be relevant when analyzing a particular debtor's good faith") (internal quotation omitted). Based on the facts and circumstances of this case, the Bankruptcy Court here concluded the second bankruptcy was filed chiefly because "[t]his debtor ... got a deal and now doesn't want to comply with it . . . [a]nd that's really what it comes down to." Apr. 24 Hear. Tr. at 41:15-17; *see also id.* at 26:3-8 (noting bankruptcy was filed on the eve of default with "the same issues that were litigated and resolved over and over again," and concluding "I don't think there is a basis for [the bankruptcy filing]"). Accordingly, the record presented does not show that Appellant established a "valid reorganizational purpose." *In re SGL Carbon Corp.*, 200 F.3d at 163 (finding requirement of proper bankruptcy purpose in bankruptcy filings). Nonetheless, the Bankruptcy Court reasonably justified its dismissal "for cause" under §1112(b) in its discussion of its reasons for enforcing the waivers.

[5] Indeed, even a *de novo* review of the record shows that the significant interests in incentivizing settlement, finality, and the enforceability of court orders warrants enforcing terms that were indisputably agreed upon by sophisticated parties, mediated and ultimately approved by the Bankruptcy Court, and followed for nearly four years. *See Jenkins*, 181 B.R. at 36.

IV.    **CONCLUSION**

      For the reasons stated above, Appellant's appeal is **DENIED**, and the Bankruptcy Court's Order dismissing the action and, in the alternative, granting relief from the automatic stay, is **AFFIRMED**.  An appropriate Order accompanies this Opinion.

**DATE:** March 17, 2023

                                        *s/ Claire C. Cecchi*

                                        **CLAIRE C. CECCHI, U.S.D.J.**